**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JARRELL DENSMORE *pro se*,<br><br>*Plaintiff*,<br>v.<br><br>TRANS UNION, LLC,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 25 C 7814<br><br>Chief Judge Virginia M. Kendall |

**MEMORANDUM OPINION & ORDER**

Plaintiff Jarrell Densmore brought this action *pro se* against McCarthy, Burgess & Wolff, Inc. ("MBW") and Trans Union, LLC ("Trans Union") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. (Dkt. 14 ¶¶ 46–55). On November 4, 2025, MBW was dismissed with prejudice pursuant to joint stipulation, leaving Trans Union as the only remaining Defendant. (Dkt. 23 at 1); *see also* FRCP 41(a)(1)(A)(ii). Trans Union filed the present Motion for Summary Judgment. (Dkt. 39). For the below reasons, the Court grants Trans Union's motion [39].

**BACKGROUND**

On July 10, 2025, Plaintiff filed this lawsuit alleging, amongst other things, that Trans Union violated § 1681b by providing MBW with a copy of Plaintiff's consumer report without a permissible purpose. (Dkt. 40-1 ¶ 10; Dkt. 43 ¶ 10). After Defendant initially filed a Motion to Dismiss, Densmore filed an Amended Complaint (dated August 21, 2025) alleging that Trans Union violated the FCRA 1) by failing to "establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files" in violation of § 1681e(b) and 2) by failing to "maintain reasonable procedures" to ensure consumers'

credit information is appropriately reported in violation of § 1681e(a). (Dkt. 14 ¶¶ 47–55).[1] Densmore contends that Trans Union's alleged noncompliance was willful and thus subject to the enhanced civil penalties under § 1681n.

Parties proceeded to discovery, which closed on March 2, 2026. After a dispute in which Plaintiff initially sought a protective order for his bank accounts and credit cards (Dkt. 28), the Parties reached a joint agreement to litigate solely on the documents thus far provided and Densmore's deposition. (Dkt. 35). Trans Union then filed for summary judgment, arguing that Densmore had provided no evidence of noncompliance with the FCRA, no evidence of damages, and no evidence sufficient to establish statutory or punitive damages.

## I. Factual Background

As a threshold matter, the Court notes that this section derives almost exclusively from Trans Union's 56.1 Statement and Plaintiff's corresponding response (Dkts. 40-1, 43). Plaintiff provided a 56.1 statement but did not provide a single citation to the record, which also provides the basis for Trans Union's objection to every assertion in the document. (Dkts. 42, 47). While Plaintiff is *pro se*, ultimately, by not even attempting to comply with the Local Rule requirements, Plaintiff has frustrated the Rule's purpose: to "make summary-judgment decision making manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019). "Local Rule 56.1's enforcement provision provides that when a responding party's

---

[1] Plaintiff also initially alleged in his Amended Complaint that Trans Union violated the FCRA when it provided him with truncated account numbers in violation of § 1681(g)(a)(1). (Dkt. 40-1 ¶ 12; Dkt. 43 ¶ 12); however, Plaintiff admitted that he abandoned that claim during his deposition. (Dkt. 40-1 ¶ 14; Dkt. 43 ¶ 14). Typically, a claim may only be voluntarily dismissed when a plaintiff files "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment [or by] a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A). Nonetheless, because Densmore declined to prosecute this aspect of his claim at multiple opportunities, the Court will treat this contention as dismissed. *See Morton v. Greer,* 61 F.3d 906, 906 (7th Cir. 1995) (stating that briefs which contain no identifiable argument will be dismissed)); *Schramm L. Grp., LLC, v. Pitney Bowes Inc.*, 2026 WL 636820, at *2 (N.D. Ill. Mar. 6, 2026) ("The Court needn't consider . . . 'underdeveloped, conclusory, and undeveloped' argument[s].") (cleaned up) (quoting *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012)). The same is true of Plaintiff's initial references to emotional distress claims. (Dkt. 40-1 ¶ 20; Dkt. 43 ¶ 20).

statement fails to controvert the facts as set forth in the moving party's statement in a manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Even where the non-moving party is representing himself *pro se*, "[a] district court is not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.' " *Id.* (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trustee*, 233 F.3d 524, 529 (7th Cir.2000)).

The following facts are undisputed unless otherwise indicated.[2] Densmore is a "consumer" and Trans Union is a "consumer reporting agency" ("CRA") as defined by the FCRA. § 1681a(c), (f); (Dkt. 40-1 ¶ 1; Dkt. 43 ¶ 1). As a CRA, TransUnion operates in a highly regulated environment with tens of thousands of subscribers. (Dkt. 40-1 ¶ 2; Dkt. 43 ¶ 2). Trans Union has numerous and varied procedures and systems that it has designed with the purpose of ensuring on an ongoing basis that the furnishers of information are providing accurate information. (Dkt. 40-1 ¶ 3; Dkt. 43 ¶ 3). In 2011, MBW certified to Trans Union that it is a debt collector, that it agrees to fully comply with the FCRA and that it will only request consumer reports for a permissible purpose. (Dkt. 40-1 ¶ 4; Dkt. 43 ¶ 4). On December 3, 2024, MBW requested Plaintiff's consumer report from Trans Union and—based on the certification that MBW would only request reports if a permissibly purpose exists, as included in the agreement between MBW and Trans Union—Trans Union provided MBW with a copy of Plaintiff's consumer report as an account review inquiry. (Dkt. 40-1 ¶ 5; Dkt. 43 ¶ 5).

At this stage in the litigation, Parties agree that Densmore is only asserting FCRA claims relating to this MBW account review inquiry. (Dkt. 40-1 ¶ 19; Dkt. 43 ¶ 19). Plaintiff admits he

[2] In some instances, Plaintiff purports to object to the stated fact, but grounds his objection in an unrelated assertion. The Court construes this *pro se* filing liberally, but nonetheless considers as undisputed some facts in which the alleged "dispute" does not amount to a valid material objection.

produced no consumer reports prepared by Trans Union that were provided to third parties and included the account review inquiry. (Dkt. 40-1 ¶ 23; Dkt. 43 ¶ 23). Plaintiff admitted in his deposition that he did not know that a credit review inquiry has no impact on his credit score, creditworthiness, and has no impact on creditors decision to grant credit opportunities. (Dkt. 40-1 ¶ 27; Dkt. 43 ¶ 27). Plaintiff never disputed information related to the MBW inquiry with Trans Union prior to this suit. (Dkt. 40-1 ¶ 26; Dkt. 43 ¶ 26).

In terms of the downstream harm, Densmore relies on one purported credit increase denial from Alliant Credit Union dated January 15, 2025. (Dkt. 40-1 ¶ 29; Dkt. 43 ¶ 29). In his deposition, he claimed that while he had multiple purported denial letters, he elected to only produce this letter to Trans Union (after months of delay) because it was the only document he deemed relevant "to the MBW issue." (Dkt. 40-3 26:5-27:2; 42:1-45:10). Initially, Densmore did not docket the alleged Alliant denial that undergirds his entire claim; at the Court's direction, he filed the document for the Court's review on June 25, 2026. (Dkt. 44). Trans Union, for its part, derides the letter as seemingly inauthentic, (Dkt. 40 at 9), asserting that it possesses no record of any inquiries into Plaintiff's Trans Union credit file made by Alliant in either January or February 2025, (Dkt. 40-1 ¶¶ 9, 30), which Densmore disputes as disproven by his letter. (Dkt. 43 ¶ 29).

The document denies a loan request for $40,0000 on a Visa Platinum for the principal reason of "credit application incomplete;" the document then checks the box for the decision being based in whole or in part from a CRA and indicates Trans Union provided a credit score of 547 on January 15, 2025; the document also checks the box for the decision being based in whole or in part from information from a non-CRA source. (Dkt. 44). Under "key factors that adversely affected your score," the document lists 1) lack of revolving account information, 2) balances on "accts" too high compared to credit limits and loan amounts, and 3) number of recent inquiries on

credit bureau report. (*Id.*) The document contains multiple blank entries, including blanks for the member/account number, the member SSN, and two blanks that say "for credit union use only:" employee initials and the date mailed/delivered. (*Id.*)

Densmore asserts that he had requested a credit limit increase on his Alliant Visa Signature credit card. (Dkt. 40-3 at 21:6-9). In light of the letter's reference to "Visa Platinum" as the account description, Densmore was asked in his deposition whether he had a Visa Platinum card; he stated that he does not and is "unsure" why the denial letter utilizes that description when that was not the type of card he had at the time of the alleged denial. (Dkt. 40-1 ¶ 31; Dkt. 43 ¶ 31). Plaintiff has not identified any witnesses in this litigation with firsthand and non-hearsay knowledge for the reasons for Plaintiff's alleged credit denial. (Dkt. 40-1 ¶ 22; Dkt. 43 ¶ 22).

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *See e.g.*, *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). "A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (citation omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). It is also a general rule that a court should liberally construe the filings of a *pro se* litigant. *See*

*Korsunskiy v. Gonzales*, 461 F.3d 847, 850 (7th Cir. 2006) ("If the judge can see what the pro se litigant is driving at, that is enough.").

**DISCUSSION**

"[CRAs] collect consumer information from banks, credit lenders, and collection agencies (known as furnishers), compile the information into consumer reports, and provide the reports to authorized users." *See Amorah v. Equifax Info. Servs., LLC*, 2020 WL 6565220, at *2 (N.D. Ill. Nov. 9, 2020) (citing *Denan v. Trans Union LLC*, 959 F.3d 290, 293, 295 (7th Cir. 2020)). Trans Union is one such CRA, operating with information from tens of thousands of sources. (Dkt. 40-1 ¶ 2; Dkt. 43 ¶ 2).

"The FCRA imposes duties on consumer reporting agencies and furnishers in a manner consistent with their respective roles in the credit reporting market." *Denan*, 959 F.3d at 294. The statute was designed "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Chaitoff v. Experian Info. Sols.*, 79 F.4th 800, 809 (7th Cir. 2023) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). It demands CRAs like Trans Union "exercise their grave responsibilities with fairness, impartiality, and a respect." *Chaitoff*, 79 F.4th at 809 (quoting § 1681(a)(4)). At the same time, it is, by definition, "not a strict liability statute." *Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 592 (7th Cir. 2019). If a CRA negligently violates any duty imposed by the FCRA, the plaintiff may collect actual damages, costs, and fees. *Ruffin-Thompkins v. Experian Info. Sols.*, 422 F.3d 603, 607 (7th Cir. 2005). If the CRA commits a "willful violation" of the FCRA, the consumer may also recover punitive damages. *Id.*

## I. Densmore's Standing to Sue

Densmore alleges willful, and in the alternative, negligent FCRA violations. For a willful violation, the FRCA provides for actual, statutory, or punitive damages. § 1681n. For a negligent violation, the statute provides only for actual damages. § 1681o. Hence, claims for negligent noncompliance with the FCRA require a showing of actual damages while claims for willful noncompliance do not. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 622 (7th Cir.2007) (noting that "[w]hile a plaintiff's sustaining injury is usually a necessary part of a claim's accrual, the FCRA contemplates possible awards of statutory damages where the violation is willful. . . . Thus, actual damages are not necessarily a precondition for suit"); *see also Asufrin v. RoundPoint Mortg. Servicing Corp.*, 2016 WL 1056669, at *4 (N.D. Ill. Mar. 17, 2016). Thus, in order for Densmore to win on a theory of negligence, he must establish that he actually has standing to sue (including actual damages).

"A plaintiff invoking federal jurisdiction bears the burden of establishing the 'irreducible constitutional minimum' of standing by demonstrating (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016) (quoting *Lujan v. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Specifically, "the injury-in-fact requirement requires a plaintiff to show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 330 (quoting *Lujan*, 504 U.S. at 560). Finally, "a violation of the FCRA alone [is] insufficient for Article III standing, as the plaintiff [is] also required to show a concrete harm that flowed from the FCRA violation. *See Bowse v. Portfolio Recovery Assocs., LLC*, 218 F. Supp. 3d 745, 749 (N.D. Ill. 2016) (internal quotation marks omitted).

In order to establish the requisite standing for his (non-willful) § 1681e claims, Densmore must show this Court that he suffered a concrete harm as a result of any action on behalf of Trans Union. He has failed to do so. Plaintiff admits he produced no consumer reports prepared by Trans Union that were provided to third parties and included the account review inquiry. (Dkt. 40-1 ¶ 23; Dkt. 43 ¶ 23). Plaintiff admits that he did not know that a credit review inquiry has no impact on his credit score, creditworthiness, and has no impact on creditors decision to grant credit opportunities. (Dkt. 40-1 ¶ 27; Dkt. 43 ¶ 27).

Instead, Densmore's allegation stems from Densmore's belief that Trans Union impermissibly furnished Densmore's Personal Credit Report to MBW which led to Alliant denying Densmore the credit extension that he requested. (Dkt. 14 ¶¶ 12–13). The harm Densmore wishes to rectify with this suit stems from this alleged denial. (*Id.* ¶ 14). Yet as noted above, Trans Union has no record of this inquiry and suggests that the letter may have been falsified. In fact, Densmore's other main exhibit, his Personal Credit Report from Trans Union, does not reflect an inquiry into his account from Alliant at or around the time he was allegedly denied his request for a credit increase. (Dkt. 13, Exhibit A, Densmore's Personal Credit Report at 13–15).

Even if the letter is deemed valid, though, the MBW inquiry could not have possibly impacted Densmore's credit score. Defendant highlights that the MBW inquiry was a soft inquiry that had no effect on Plaintiff's credit score and would not have been seen by anyone other than Plaintiff. (Dkt. 40-1 ¶ 27; Dkt. 43 ¶ 27). "No creditors or credit scoring models can view or consider a soft inquiry as it is systematically impossible," *See Jeffers v. First Nat'l Bank of Omaha*, 2023 WL 6018921, at *7 (C.D. Ill. Mar. 22, 2023), *on reconsideration in part*, 679 F. Supp. 3d 757 (C.D. Ill. 2023), "Soft inquiries are not on the credit report formats that are pulled by lenders or other third parties. Soft inquiries do not affect an individual's credit score or have economic

impact on a consumer's credit history." Defendants are thus correct to assert that there is no possible scenario where Plaintiff can prove that he was damaged by the soft inquiry in question.

In sum, Densmore has failed to provide evidence that Trans Union's conduct led to his denial of credit, and therefore failed to show this Court he has suffered any concrete harm which is "fairly traceable" to the Defendant. That would leave only Densmore's claim on a theory of willfulness, which may be determined by the Court as a matter of law. *Van Straaten v. Shell Oil Products Co. LLC*, 678 F.3d 486 (7th Cir. 2012). On these facts, there is no genuine dispute of material fact that Plaintiff is not entitled to punitive damages. The Supreme Court has made clear "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). Densmore has produced not a scintilla of evidence that would meet this high bar.

The aforementioned analysis alone decides this case. Given the *pro se* nature of this litigation, though, the Court will entertain the merits on Densmore's terms.[3] Even so, the Court still clearly grants Trans Union's Motion for Summary Judgment on the merits.

---

[3] The Court proceeds with the merits given the *pro se* nature of the claim. Nonetheless, "[a] plaintiff has the duty of prosecuting his action and moving it forward." *I.S.K., Inc. v. Eagle Star Ins. Co. of Am.*, 1986 WL 2086, at *1 (N.D. Ill. Jan. 30, 1986) (citing *Jaffree v. Scott*, 590 F.2d 209, 211 (7th Cir.1978)). Densmore has not fulfilled this duty in the present action. Rather than taking all necessary steps to provide weight and credibility to his argument, Densmore only "elected to produce what [he believed] was materially relevant" to his claim. (Dkt. 40-3 25:20-21). Unfortunately, what he finds materially relevant, is not relevant at all. In addition, Densmore obfuscated the discovery process at every turn. (Dkts. 24, 28, 29).

## II. Densmore's Claims Fail to Meet the FCRA's Basic Requirements

As noted above, Parties agree that at this stage of the litigation, Densmore is only asserting FCRA claims relating to this MBW account review inquiry. (Dkt. 40-1 ¶ 19; Dkt. 43 ¶ 19). Construing Densmore's arguments liberally, he appears to take issue with the following: First, he alleges that Trans Union has failed to establish and follow reasonable procedures to assure maximum possible accuracy in the preparation of his credit reports and credit files in violation of § 1681e(b). Second, he believes that Trans Union has not maintained proper procedures in furnishing his credit report which violates § 1681e(a). (*See generally* Dkt. 14).

Regarding Densmore's § 1681e(b) claim, Trans Union contends that Densmore has failed to identify any inaccuracy of information in his credit report and therefore his § 1681e(b) claims fails on its face. (Dkt. 40 at 4). This Court also finds that Densmore has not identified any inaccuracy. *See Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2024) (holding that in order to assert a claim under § 1681e(b), a plaintiff must first show that there is an inaccuracy in his consumer credit report); *see also Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 591 (7th Cir. 2019) (holding a consumer reporting agency "cannot be liable as a threshold matter [under § 1681e(b)] if it did not report inaccurate information"). Thus, Trans Union is entitled to summary judgment on this claim.

That leaves Densmore's claim under § 1681e(a). In relevant part, the FCRA provides that CRAs shall "follow reasonable procedures. . . to limit the furnishing of consumer reports to the purposes listed under section 1681b." § 1681e(a). "These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose." *Id.* In other words, when a CRA turns over a credit report, it is limited by enumerated statutory purposes as set forth

in § 1681b and must implement procedures to ensure compliance with the statute. Under the FCRA, Trans Union may provide a consumer's credit report to any person for a "permissible purpose." § 1681b. Therefore, the questions here are (1) whether MBW accessed Densmore's consumer report for a permissible purpose, and (2) whether it was reasonable for Trans Union to allow the inquiry.

The statute specifically defines a "permissible purpose" to include providing the report to an individual or entity that the CRA "has reason to believe [] intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." § 1681b(a)(3)(A). "Thus, obtaining a credit report in connection with collection of a debt is permissible under the FCRA." *Smith v. John P. Frye, P.C.*, 2011 WL 748363, at *3 (N.D. Ill. Feb. 24, 2011) (citing *Miller v. Wolpoff & Abramson, LLP,* 309 F. App'x 40, 43 (7th Cir. 2009)); *Criddell v. Transunion LLC,* 2010 WL 1693093, at *4 (N.D.Ill. Apr.27, 2010) ("Because Torres was acting as a debt collection agency, it had a legitimate reason to obtain Criddell's credit report, and he has failed to state a claim that Torres acted unlawfully under the FCRA.").

In 2011, MBW certified to Trans Union that it is a debt collector, that it agrees to fully comply with the FCRA and that it will only request consumer reports for a permissible purpose. (Dkt. 40-1 ¶ 4; Dkt. 43 ¶ 4; Ex. 1, Dkt. 40-2 at 9). As a general rule, CRAs meet the FCRA's reasonability requirements where they have reason to trust the requesting entity, the reliability of which is bolstered by these legal agreements. *See Henson v. CSC Credit Services*, 29 F.3d 280, 285 (7th Cir. 1994) (credit reporting agency can rely on information it believes to be reputable); *Sarver*, 390 F.3d at 972 (explaining that requiring CRAs to engage in background research on information furnished by financial institutions would balloon the costs of their services, which in

turn would be passed to consumers); *see id.* at 972 ("In the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist, we cannot find that such a requirement to investigate would be reasonable given the enormous volume of information Experian processes daily."). *Henson* expressly rejected a requirement for credit reporting agencies to engage in "background research which substantially increase the cost of their services" absent prior notice the source is unreliable. 29 F.3d at 286.

Densmore asserts, without citing any evidentiary support or case law, that he "had no relationship, account, application, or debt with MBW." (Dkt. 41 at 1). Trans Union correctly observes, however, that "consumers generally do not willingly enter into an agreement with debt collectors or fill out an application with debt collectors." (Dkt. 45 at 3). It is also true in the eyes of this Court that Densmore "has failed to provide any tangible evidence, or even allege, that he does not owe the underlying creditor for the debt which MBW is attempting to collect." (*Id.*) His assertion that he did not approve of the purpose that brought MBW to seek information from Trans Union is fundamentally insufficient at this stage of litigation. "Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Slowiak v. Land O' Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir.1993).

Further, Plaintiff also fails to provide any evidence or authority that the longstanding agreement between Trans Union and MBW does not establish the grounds for a permissible purpose. (Dkt. 43 ¶ 4). Densmore provided the Court with four documents: his Personal Credit Report from Trans Union, an Advisory Opinion letter from the Federal Trade Commission to the Assistant General Counsel at Trans Union, a consolidated accounting of his Personal Credit Report that he compiled after his own review, and his adverse action notice from Alliant. (*See* Dkt. 13). While these documents may appear dispositive to Densmore, none of them actually provide

evidence to support his claim that MBW was provided Densmore's consumer report for an impermissible purpose. First, Densmore's Personal Credit Report merely proves that MBW did indeed conduct an account review inquiry into Densmore's account, not that the review was done for an impermissible purpose. Similarly, the Alliant adverse action notice does not indicate that Trans Union allowed MBW to impermissibly access Densmore's credit report. Second, the Advisory Opinion letter and the consolidated accounting relate only to Densmore's abandoned claim and are therefore unhelpful to this Court in deciding the remaining matter. Because this Court has not been provided any evidence that Trans Union allowed MBW to conduct an account review inquiry for an impermissible purpose, it finds Trans Union has not violated § 1681b. As a result, there is no basis for a § 1681e(a) claim upon which a reasonable juror could conclude that Trans Union failed to meet its statutory requirements in this case.

## CONCLUSION

For the above reasons, Trans Union's Motion for Summary Judgment [39] is granted. Densmore's Complaint is dismissed, and this civil case is terminated.

Virginia M. Kendall
United States District Judge

Date: August 26, 2026